[No. 37883-0-I.    Division One.    March 24, 1997.]

*In the Matter of Visitation of* JUSTIN ROSS WOLCOTT.

DAVID L. CLAY, *Appellant,* v. LISA L. WOLCOTT, *Respondent.*

---

[40]RCW 49.17.020(3).

[41]RCW 49.17.060(1).

469

*David G. Metcalf*, for appellant.
*Grace S. Wagner*, for respondent.

Cox, J. — David Clay, the self-described "psychological parent" of Justin Wolcott, petitioned for visitation with Justin. Justin is the son of Clay's former companion, Lisa Wolcott. Justin is not biologically related to Clay. The trial court dismissed the petition, holding that Clay had no standing, and awarded fees in favor of Wolcott. Because there was no custody proceeding pending at the time of Clay's petition for visitation and the court did not otherwise err, we affirm.

Justin was born to Lisa Wolcott on April 10, 1986. Shortly after Justin's birth, Wolcott began dating Clay. They started living together in May of 1988. Justin lived

with them. Clay alleges that during this time, he established a close relationship with Justin and regarded him as a son. Clay and Wolcott separated in April 1992.

Clay alleges that beginning in September 1993, Wolcott began to "place impediments" in the way of his relationship with Justin. He subsequently filed a petition to formally establish visitation rights with Justin. The court commissioner entered a temporary order allowing visitation every other weekend.

Wolcott moved to revise the ruling. The superior court granted a revision allowing one Saturday per month visitation. Wolcott appealed that order.

A commissioner of this court granted Clay's motion to dismiss the appeal because the temporary visitation order was not a final order. The commissioner also determined that the order was not subject to discretionary review because Clay had standing to petition for visitation and Wolcott failed to show that the trial court had committed obvious or probable error.

In September 1994, Wolcott moved for summary judgment and in the alternative for declaratory judgment. She also sought to terminate third party visitation. Clay moved to strike the hearing on this motion. Judge Trumbull granted the motion to strike and awarded Clay $1,000 in terms.

At the trial on the petition for visitation in October 1995, the court concluded that Clay did not have standing and therefore dismissed the proceeding. It also awarded Wolcott $3,000 in attorney fees.

I

Standing

Clay bases his right to petition for visitation on RCW 26.10.160(3). That statute states:

> *Any person* may petition the court for visitation rights *at any time* including, but not limited to, custody proceedings. The court may order visitation rights for any person when

visitation may serve the best interest of the child whether or not there has been any change of circumstances.[1]

Clay argues that the trial court erred in determining that he did not have standing to petition for visitation with Justin. He contends that the literal language of RCW 26.10.160(3) provides that any person may petition for visitation rights at any time.

Wolcott responds that RCW 26.10.160(3) allows for such petition only where the child in question is not in the custody of a parent, or that the parents are unfit. We agree with Wolcott.

■■■ We review questions of statutory construction de novo.[2] A statute that is clear on its face is not subject to judicial interpretation.[3] However, where the literal reading of a statute would lead to absurd consequences, we must construe the statute "as a whole in order to ascertain legislative purpose."[4]

This court has previously interpreted RCW 26.10.160(3) as limiting petitions for visitation to situations involving custody actions by nonparents.[5] We agree with that interpretation.

A literal interpretation of RCW 26.10.160(3) would lead to absurd results. The trial court in this case perceived this and offered the following example:

> Hypothetically, under petitioner's assumption, a person could petition to have visitation rights with any child(ren) that Bill Gates and his wife might have, and put Bill Gates and his wife through the task of defending the petition for visitation on the grounds that it is not in the best interests of their child to have visitation rights with whoever thinks it might

---

[1](Emphasis added.)

[2]*Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 443, 842 P.2d 956 (1993).

[3]*In re Marriage of Kovacs*, 121 Wn.2d 795, 804, 854 P.2d 629 (1993).

[4]*Alderwood Water Dist. v. Pope & Talbot, Inc.*, 62 Wn.2d 319, 321, 382 P.2d 639 (1963).

[5]*In re Custody of B.S.Z.-S.*, 74 Wn. App. 727, 731, 875 P.2d 693 (1994).

be a good idea to have visitation rights with the child of a multibillionaire.

In addition, a literal interpretation of the phrase "at any time including, but not limited to, custody proceedings" would produce untenable situations. For example, stable families could be forced to defend in court against visitation petitions having no basis.

Because a literal interpretation of RCW 26.10.160(3) would have such intolerable consequences, we construe the statute to determine what the Legislature intended.

We first consider the relevant statute in light of RCW 26.10 as a whole. RCW 26.10.030(1) indicates that a non-parent may initiate a custody proceeding "only if the child is not in the physical custody of one of its parents or if the petitioner alleges that neither parent is a suitable custodian." RCW 26.10 is entitled "Nonparental Actions for Child Custody," implying that the entire statute applies to child custody proceedings. Therefore, we read RCW 26.10.160(3) as applying only where there is a custody proceeding based on the circumstances set forth in RCW 26:10.030(1).

Second, the statutory history of RCW 26.10.160(3) leads us to conclude that the Legislature did not intend the broad interpretation favored by Clay. In 1987, the Legislature reenacted as RCW 26.10 portions of RCW 26.09 dealing with third party custody actions.[6] RCW 26.10.010 states that

[i]t is the intent of the legislature to reenact and continue the law relating to third-party actions involving custody of minor children in order to distinguish that body of law from the 1987 parenting act amendments to chapter 26.09 RCW, which previously contained these provisions.

The relevant portions of RCW 26.10.160(3) and former RCW 26.09.240[7] are identical. Prior to the 1987 act that

---

[6]Laws of 1987, ch. 460, §§ 25-51.

[7]See Laws of 1977, ch. 271, § 1, p. 943.

created RCW 26.10, RCW 26.09.240 stated that any person could petition for visitation "at any time including, but not limited to, custody proceedings."[8] From 1987 to 1996, the Legislature made no changes relevant to the question before us to either statute.

Clay points out that in 1987, the Legislature deleted the "including, but not limited to, custody proceedings" language from RCW 26.09.240.[9] However, he does not indicate why this change should affect our decision.

In 1996, the Legislature amended RCW 26.09.240.[10] The amendment limits the circumstances under which "any person" may petition for visitation rights. The statute now provides that a nonparent may petition for visitation only when the parents have commenced an action under RCW 26.09.[11] A petition will be dismissed unless the petitioner can demonstrate by clear and convincing evidence "that a significant relationship exists with the child with whom visitation is sought."[12] If the court dismisses a petition because the petitioner has failed to show such a relationship, the petitioner must pay reasonable costs and attorney fees to the respondent.[13]

■ ■ We cannot conceive of any reason why the Legislature did not similarly amend RCW 26.10.160(3), a virtually identical provision in the parallel statute. We therefore conclude that the Legislature unintentionally overlooked amending this statute. Even if the Legislature intended to leave RCW 26.10.160(3) in its present form, we nevertheless believe that the reasons we have already discussed support our conclusion that a custody proceeding must be pending to permit a third party visitation petition.

[8]LAWS OF 1977, ch. 271, § 1, p. 943.

[9]LAWS OF 1987, ch. 460, § 18, pp. 2027-28.

[10]LAWS OF 1996, ch. 177, § 1, pp. 643-44.

[11]RCW 26.09.240(1).

[12]RCW 26.09.240(3).

[13]RCW 26.09.240(3).

Because we hold that RCW 26.10.160(3) does not allow for visitation petitions when there is no custody proceeding, we conclude that Clay does not have standing.

## II
### Other Arguments

Wolcott makes several additional arguments. She contends that her new husband's adoption of Justin eliminates any visitation rights. She further argues that Clay's petition should be dismissed because Clay failed to serve notice on Justin's biological father or his stepfather. Finally, Wolcott argues that under the best interest of the child test, which applies if Clay has standing to petition for visitation, visitation should be denied. Because we hold that Clay does not have standing under RCW 26.10.160(3), we need not reach any of these arguments.

We affirm the order dismissing Clay's petition. The remainder of this opinion has no precedential value and will not be published.[14]

COLEMAN and GROSSE, JJ., concur.

Reconsideration denied May 23, 1997.

Review granted at 133 Wn.2d 1028 (1998).